UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DWAYNE SCOTT BERRY,

        Petitioner,

v.                                                Case Number 08-10010-BC
                                                 Honorable Thomas L. Ludington

BLAINE LAFLER,

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY, BUT GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

On September 19, 2008, Petitioner Dwayne Scott Berry filed a pro se petition for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted of armed robbery and felony firearm in Oakland County Circuit Court and sentenced to two years in prison for the felony firearm conviction, followed by fifty to seventy-five years for the robbery conviction. Petitioner alleges that he is incarcerated in violation of his constitutional rights. Respondent has filed an answer to the habeas petition in which he asserts that Petitioner's claims lack merit, are procedurally defaulted, or are not cognizable on habeas review. Petitioner's claims lack merit, and will be denied.

I.

Petitioner was charged with stealing $16,000 from Jack and Barbara Parent on August 21, 2001. He was tried jointly with his co-defendant, Darry Dean Rabideau ("Rabideau"), but before a separate jury. The facts have been summarized by the Michigan Court of Appeals as follows:

    Defendant's convictions arise from the armed robbery of a married couple in their late sixties at their home, located in a secluded 2-1/2 acre wooded area. Defendant was present at the victim's home where he witnessed the transfer of

$16,000 cash for the sale of a vintage vehicle. The victim sold the vehicle to defendant's acquaintance, Robert Hogg, and defendant witnessed the sale for "security reasons." After the transaction, the victim placed the cash in a bank envelope on a desk in his office. There was a bathroom adjacent to this office, and defendant repeatedly asked to use the bathroom during his visit. At approximately 8:30 p.m., Hogg and his party, including defendant, left the victim's residence.

Defendant returned to the victim's home shortly before 11:00 p.m. and represented that he had left some jewelry in the bathroom. Upon gaining access to the home, defendant pointed a small black handgun at the victim. The victim's wife heard the hostility in defendant's voice and saw the gun. She backed into an office closet and dialed 911, but defendant retrieved her from the closet and hung up the telephone. At 11:03 p.m., a police dispatcher heard a partial statement over the victim's phone line: "do this and you won't get hurt." Southfield police officers were dispatched to the victim's residence.

The victim rushed defendant and told his wife to run. Defendant yelled, and a second man, whom both the victim and his wife identified as codefendant Darry Dean Rabideau, ran into the garage. At the direction of defendant, Rabideau chased the victim's wife, but he could not locate her. Rabideau returned to the garage area where defendant had managed to subdue the victim with a metal object. Rabideau was instructed to guard the victim while defendant briefly went back into the home. The men then took defendant into the backyard and instructed him to call for his wife or he would be killed. The victim testified that when he moved his head, the gun discharged.

At 11:10 p.m., Southfield police officers arrived at the victim's house and announced their presence. Defendant immediately released the victim and fled. When the victim went into the house, he discovered that the $16,000 was missing. Although he did not see who took the money, he testified that it was there before defendant arrived.

After the incident, the police were unsuccessful in locating defendant for several months. In January 2002, six months after the armed robbery, Southfield police attempted to make a routine traffic stop, but the driver averted the police. Through information generated from the license plate number, the police learned that defendant was the driver of the car. Ultimately, police were able to establish surveillance of a residence and arrest defendant.

Defendant testified that the victim offered him $5,000 to stage a robbery to support an insurance claim. The victim allegedly told defendant to come back after dark, knock on the door, and pull a gun on him. Defendant enlisted Rabideau to drive, but only told him that the victim was paying him to scare his wife out of the house. Defendant denied taking the $16,000, hitting the victim with a metal object,

-2-

or firing a gun at the victim's head. According to defendant, during the bogus robbery, he and the victim were wrestling around in the backyard "trying to make the robbery look good when the gun went off." Defendant admitted that, immediately after the incident, he fled the state, and also fled the Southfield police on January 21, because he knew that there was a warrant for his arrest.

*People v. Berry*, No. 244937, at 1-2 (Mich. Ct. App. May 4, 2004).

There was additional evidence that Mr. and Mrs. Parent were in shock when the police arrived at their home and that the Parents recovered only $1,000 from their insurance company. The police found Rabideau hiding in the woods after the robbery. Robert Hogg testified that Petitioner called him at home after the robbery and stated that he (Petitioner) had gone back to the Parents' home and robbed them. Petitioner threatened to tell the police that Hogg set up the robbery to get his money back if Hogg incriminated Petitioner in the crime.

On August 5, 2002, an Oakland County Circuit Court jury found Petitioner guilty, as charged, of armed robbery, Mich. Comp. Laws § 750.529, and felony firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner as a fourth felony offender to fifty to seventy-five years in prison for the robbery conviction and to a consecutive term of two years in prison for the felony firearm conviction.

On direct appeal from his convictions, Petitioner raised several claims, including his first three habeas claims regarding the sufficiency of the evidence, Detective Helgert's testimony, and the prosecutor's alleged suppression of evidence. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished per curiam opinion, *see Berry*, Mich. Ct. App. No. 244937, at 1, and on November 22, 2004, the state supreme court denied leave to appeal because it was not persuaded to review the issues. *See People v. Berry*, 471 Mich. 921; 688 N.W.2d 827 (2004) (table).

On November 15, 2005, Petitioner filed a motion for relief from judgment in which he raised habeas claims four through seven, which challenge Petitioner's sentence and his attorneys' representation at trial and on appeal. The trial court determined that Petitioner's sentencing claim lacked merit and that Petitioner was precluded from obtaining relief on his other claims because he had not shown "cause" for his failure to raise the claims on appeal. The Michigan Court of Appeals and the Michigan Supreme Court subsequently denied leave to appeal because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D).[1] *See People v. Berry*, No. 272500 (Mich. Ct. App. Apr. 19, 2007); *People v. Berry*, 480 Mich. 889; 738 N.W.2d 727 (Mich. 2007) (table).

Petitioner filed his habeas corpus petition on January 2, 2008. The grounds for relief read:

I. Petitioner was deprived of his Fifth and Fourteenth Amendment rights to due process when there was insufficient evidence to support the conviction for armed robbery because the evidence does not establish the theft element of the crime.

II. Petitioner was denied his Sixth and Fourteenth Amendment rights to confront the witnesses against him when Detective Helgert testified

---

[1] Pursuant to Rule 6.508(D)(3), a state court may not grant relief if a defendant's motion for relief from judgment

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence . . . unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief . . . .

Mich. Ct. R. 6.508(D).

>             about Mr. Rabideau's incriminating pretrial statement in front of Mr.
>             Berry's jury.
>
> III.    Petitioner was deprived of his Fifth and Fourteenth Amendment
>         rights to due process and a fair trial where the prosecutor suppressed
>         exculpatory evidence consisting of the complainant's medical records
>         and photographs of his injuries.
>
> IV.     Petitioner was denied his Sixth and Fourteenth Amendment rights to
>         effective assistance of counsel at trial where:
>
>         A.    Trial counsel ineffectively failed to object to the
>               testimony of detective Helgert when he testified about
>               Mr. Rabideau's incriminating pretrial statement in
>               front of Mr. Berry's jury.
>
>         B.    Trial counsel ineffectively failed to request an
>               instruction on the lesser included offense of larceny
>               from a person.
>
> V.      Petitioner was denied his Sixth and Fourteenth Amendment rights to
>         effective assistance of counsel at sentencing where counsel failed to
>         object to the scoring of offense variable 7.
>
> VI.     Petitioner was deprived of his Fifth, Sixth, and Fourteenth
>         Amendment rights when the state trial court increased the statutory
>         sentencing guidelines range in this case based upon facts which were
>         not proven to a jury beyond a reasonable doubt.
>
> VII.    Petitioner was denied his Fourteenth Amendment right to effective
>         assistance of appellate counsel where appellate counsel failed to raise
>         the claims presented in rounds four through six of this habeas petition
>         on direct review in the appeal of right.

Respondent argues that Petitioner's first claim lacks merit and that all his remaining claims are procedurally defaulted, not cognizable on habeas review, or without merit. Procedural default

is not a jurisdictional limitation, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), and the Court has found it more efficient to address the merits of Petitioner's claims than to analyze whether the claims are procedurally defaulted. Accordingly, the Court will proceed to address each of Petitioner's claims on its merits, using the following standard of review.

## II.

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). And, under 28 U.S.C. § 2254(e)(1), a state court's factual determinations are presumed to be correct unless the habeas petitioner rebuts them with clear and convincing evidence.

Granting a habeas petition under the "contrary to" clause is only appropriate "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 326, 412-13 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions, but unreasonably applies that principal to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, a habeas court must ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. Review is de novo as to claims four, five, and seven because no state court assessed the merits of those claims. *Dorn v. Lafler*, 601 F.3d 439, 442 (6th Cir. 2010) (citing *Maples v. Stegall*, 340 F.3d 433, 436-37 (6th Cir. 2003)).

III.

A.

The first habeas claim alleges that Petitioner was deprived of his Fifth and Fourteenth Amendment rights to due process because there was insufficient evidence to support his armed robbery conviction. Specifically, Petitioner contends that there was no evidence of the theft element. The Michigan Court of Appeals disagreed and concluded on review of Petitioner's claim that the evidence was sufficient to support the armed robbery conviction.

1.

When reviewing a sufficiency-of-the-evidence claim, this Court must examine "the evidence in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

The *Jackson* standard "must be applied with explicit reference to the substantive elements

of the criminal offense as defined by state law." *Id.* at 324 n.16. In Michigan, "[t]he elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute." *People v. Carines*, 460 Mich. 750, 757; 597 N.W.2d 130, 135 (1999) (quoting *People v. Turner,* 213 Mich. App. 558, 569; 540 N.W.2d 728, 734 (1995). The type of weapon described in the statute is "a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon." Mich. Comp. Laws § 750.529.

Mr. Parent testified that Petitioner pointed a handgun at him and threatened to kill him if he did not do as Petitioner requested. Although the Parents did not see Petitioner take their money, the money was present before Petitioner and Rabideau arrived at the Parents' home, and it was missing after the two men left the premises. Furthermore, at one point, Petitioner ordered Rabideau to watch or guard Mr. Parent. Petitioner then disappeared for a few minutes. A rational juror could have inferred from the circumstantial evidence that Petitioner took the money while Rabideau was guarding Mr. Parent.

2.

Petitioner contends that, even assuming he and Rabideau took the Parents' money, there was no evidence that either one of them took the money from Mr. Parent's person or in his presence. An item is taken from a person's "presence or person" if the item is within the person's reach, inspection, observation or control such that the person could retain possession of it if not overcome by violence or fear of violence. *People v. Raper*, 222 Mich. App. 475, 482; 563 N.W.2d 709, 712 (1997).

Actual physical possession is not required. "The question is whether, at the time of

defendant's use of force, the victim's 'right to possession was . . . greater than that of his assailant.' " *People v. Beebe*, 70 Mich. App. 154, 159-160; 245 N.W.2d 547, 550 (Mich. Ct. App. 1976) (quoting *People v. Needham*, 8 Mich. 679, 685; 155 N.W.2d 267, 269 (1967)). "Takings have been held to have been in the victim's presence in cases where the victim was forced by the assailant to leave the place where the money was kept and where the victim was locked up by the assailant to prevent him from protecting his nearby property." *People v. Moore*, 13 Mich. App. 320, 322; 164 N.W.2d 423, 425 (Mich. Ct. App. 1969) (footnotes omitted). "There is no requirement that the money taken be within a victim's presence if it is within his control and he lost control because of the violence of, or his fear of, the defendant." *People v. Wiley*, 112 Mich. App. 344, 347; 315 N.W.2d 540, 541 (Mich. App. 1981) (citing *People v. Spry*, 74 Mich. App. 584, 595; 254 N.W.2d 782, 787 (1977)).

The money in dispute in this case was in the victim's office, and at one point, it was just a few feet from where Petitioner pulled out a gun and accused the Parents of stealing his jewelry. Mr. Parent was assaulted in the kitchen, which was near his office, in the garage, which was attached to the kitchen, and outside his house. If Petitioner had not assaulted Mr. Parent, Mr. Parent could have retained possession of the money in question. Violence or the fear of violence was used to sever Mr. Parent's physical possession or control of the money. Thus, the element of a "taking" of property from Mr. Parent's presence or person was satisfied.

A rational trier of fact could have concluded from the evidence, taken in the light most favorable to the prosecution, that Petitioner assaulted Mr. Parent and took $16,000 from him while armed with a weapon. The evidence was sufficient to support Petitioner's armed robbery conviction, and the state appellate court's conclusion was not contrary to, or an unreasonable application of, *Jackson*.

B.

The second habeas claim concerns Detective Christopher Helgert's testimony about Rabideau's incriminating pretrial statement. Detective Helgert testified that, after he arrested Rabideau, Rabideau "acknowledge[d] his presence there, his participation . . . ." (Tr. July 30, 2002, at 184.) Before Detective Helgert could say anything more, the prosecutor interrupted the detective and asked for a bench conference. Following the bench conference, which was not recorded, the trial court asked Detective Helgert an unrelated question. On the following day, Petitioner's attorney moved for a mistrial based on this incident. The trial court denied his motion without explanation, and the Michigan Court of Appeals ruled that the trial court did not abuse its discretion in denying the motion because Petitioner had failed to establish that he was prejudiced by the detective's remark. Petitioner contends that Detective Helgert's testimony about Rabideau's comment was improper hearsay and that the testimony deprived him of his right to cross-examine Rabideau, who did not testify at trial.

"To the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review." *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)). The Court need not determine whether Petitioner's constitutional right of confrontation was violated by Helgert's testimony, because Radideau's comment to Helgert was somewhat ambiguous and said nothing about Petitioner's participation in the incident at the Parents' home. Even if the jury interpreted Rabideau's remark as an admission, the admission did not contradict Petitioner's defense, which was that he and Rabideau went to the Parents' home and faked a robbery at Mr. Parent's request. Furthermore, Helgert's disputed testimony was an isolated and

fleeting moment in a fairly lengthy trial. No further mention was made of it, and the evidence against Petitioner was substantial.

The alleged constitutional error could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). The Court is persuaded that the error "had no or a small effect" on the jury's verdict, *Tolliver v. Sheets*, 594 F.3d 900, 924 (6th Cir. 2010), and was harmless.

C.

Petitioner alleges next that he was deprived of his rights to due process and a fair trial because the prosecutor suppressed Mr. Parent's medical records and photographs of his injuries. Petitioner alleges that he could have used the evidence to impeach Mr. Parent on the extent of his injuries and how he incurred the injuries. The Michigan Court of Appeals stated on review of this claim that the claim lacked merit because there was no evidence that the prosecutor violated a discovery order by failing to provide medical reports.

Petitioner relies on *Brady v. Maryland*, 373 U.S. 83, 87 (1963), in which the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." There are three components to a true *Brady* claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "The prejudice (or materiality) element of a Brady violation is established if there is a reasonable probability of a different outcome of the trial had the Brady material been available." *Jamison v. Collins*, 291 F.3d

380, 385 (6th Cir. 2002).

Petitioner's allegation that the prosecutor failed to disclose photographs of Mr. Parent's injuries is not supported by the record, which indicates that the prosecutor admitted the photographs in evidence over defense counsel's objections. (Tr. July 29, 2002, at 8-10, 168-71.) As for medical records, Mr. Parent testified that he did not need stitches, have any X-rays, or go to the hospital. Even assuming that there were medical records, the records would not have demonstrated how the injuries were incurred, and their omission could not have prejudiced the defense, given the strength of the evidence against Petitioner.

Petitioner has not shown that the prosecutor suppressed material evidence and that the allegedly undisclosed evidence prejudiced his defense. Therefore, his *Brady* claim fails.

D.

Petitioner's fourth and fifth claims allege ineffective assistance of trial counsel. Petitioner claims that his attorney should have (1) objected to Detective Helgert's testimony about Rabideau's incriminating pretrial statement, (2) requested a jury instruction on the lesser-included offense of larceny from a person, and (3) objected to the scoring of offense variable 7 of the Michigan sentencing guidelines.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that his attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" or if "counsel's representation fell

below an objective standard of reasonableness." *Id*. at 687-88.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

1.

Although defense counsel apparently did not make an immediate objection to Detective Helgert's testimony about Rabideau's pretrial statement to Helgert, counsel did request a mistrial on the following day. The trial court denied the motion, but offered to give a curative jury instruction. Defense counsel declined the offer on the ground that an instruction would emphasize what had happened. (Tr. July 31, 2002, at 4-7.) Counsel was not ineffective for choosing to move for a mistrial one day after Detective Helgert made his disputed remark instead of making a contemporaneous objection to Detective Helgert's testimony.

2.

Petitioner maintains that his attorney should have requested a jury instruction on larceny from a person.[2] Defense counsel requested jury instructions on the lesser-included offenses of unarmed robbery and felonious assault, but apparently not larceny from a person. (Tr. Aug. 2, 2002, at 104.)

---

[2] "The elements of larceny from a person are (1) the taking of someone else's property without consent, (2) movement of the property, (3) with the intent to steal or permanently deprive the owner of the property, and (4) the property was taken from the person or from the person's immediate area of control or immediate presence." *People v. Perkins*, 262 Mich. App. 267, 271-272; 686 N.W.2d 237, 240 (2004).

Counsel for the co-defendant, however, requested a jury instruction on larceny from a person and the trial court denied his request. (*Id*. at 4.) Because the trial court denied co-counsel's request, as well as Petitioner's requests for lesser-included offenses on unarmed robbery and felonious assault, it is unlikely that the trial court would have granted a request from Petitioner or his attorney for a jury instruction on larceny from a person. The Michigan Court of Appeals, moreover, stated that the evidence did not support Petitioner's request for jury instructions on lesser-included offenses. The Court concludes that defense counsel's performance was not deficient and, even if it were, the deficient performance did not prejudice the defense.

3.

Petitioner contends that his attorney should have objected to the scoring of fifty points for offense variable 7 of the Michigan sentencing guidelines. Offense variable 7 is used to measure any aggravated physical abuse of the victim. Mich. Comp. Laws § 777.37(1). Fifty points is appropriate if "[a] victim was treated with sadism, torture, excessive brutality, or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Mich. Comp. Laws § 777.37(1)(a). Petitioner maintains that there was no evidence of such conduct, but there was testimony that he hit Mr. Parent on the head with an object, knocked him down, and placed a gun next to his head. There was additional evidence that Petitioner directed Rabideau to pursue Mrs. Parent, who ran out of the house at Mr. Parent's suggestion. Petitioner then told Mr. Parent that he would kill Mr. Parent if Parent did not summon his wife back to the house. Mr. Parent was so concerned about his wife that, after the police arrived, he initially declined treatment for his own injuries because he wanted to look for his wife.

The evidence supports the conclusion that Petitioner's conduct was designed to increase Mr.

Parent's fear and anxiety. Defense counsel therefore was not ineffective for failing to object to the scoring of fifty points for Offense Variable 7.

4.

To summarize, Petitioner did not show that his trial attorney's performance was deficient and that the deficient performance prejudiced the defense. Consequently, he has no right to relief on the basis of claims four and five.

E.

The sixth habeas claim alleges that the trial court deprived Petitioner of his rights under the Fifth, Sixth, and Fourteenth Amendments by scoring most of the offense variables of the sentencing guidelines on the basis of facts that were not proved to a jury beyond a reasonable doubt. Petitioner argues that his minimum sentence would have been no more than thirty years if the guidelines had been properly scored.

Petitioner's claim is based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). The Supreme Court held in *Apprendi* that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The "statutory maximum" for purposes of *Apprendi* "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis omitted).

The United States Court of Appeals for the Sixth Circuit has held that "*Apprendi's* rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not

exceed the applicable statutory maximum." *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (citation omitted). Petitioner was forty years old at sentencing, and he was given a sentence of fifty years to seventy-five years for armed robbery conviction. Even though the minimum sentence of fifty years amounted to a virtual life sentence for a forty-year-old man, the maximum sentence for armed robbery is life imprisonment. Mich. Comp. Laws § 750.529. Petitioner's sentence did not exceed the statutory maximum. He is not entitled to a lesser sentence because his sentence does not violate the due process protections of the Fourth and Fifth Amendments, nor the Sixth Amendment right to a jury trial. *Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010).

F.

The seventh and final habeas claim alleges that Petitioner was deprived of effective assistance of appellate counsel because appellate counsel failed to raise habeas claims four through six in the appeal of right. To prevail on this claim, Petitioner must demonstrate that his attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687.[3]

The "deficient performance" prong requires showing that appellate counsel made an objectively unreasonable decision to raise issues other than the ones Petitioner raised. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010). In other words, Petitioner must show that claims four through six are clearly stronger than the issues counsel presented to the Michigan Court of Appeals. *Id*.

The Court determined above that trial counsel was not ineffective and that Petitioner's

---

[3] The *Strickland* standard applies to claims about appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

sentencing claim lacks merit because *Blakely* does not apply to Michigan's indeterminate sentencing scheme. The sentencing and ineffective-assistance-of-counsel claims are not clearly stronger than the issues counsel presented to the Michigan Court of Appeals. Appellate counsel therefore made an objectively reasonable decision not to raise claims four through six in the appeal of right. Petitioner has no right to relief on the basis of his claim about appellate counsel.

IV.

The state courts' opinions and orders did not result in an unreasonable determination of the facts. The state courts' opinions and orders also did not result in decisions that were contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED** with respect to all of Petitioner's claims. Reasonable jurists would not find the Court's resolution of Petitioner's claims debatable or wrong, nor conclude that the issues warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 674 (2004). However, if Petitioner chooses to appeal this decision, he may proceed in forma pauperis on appeal, because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

                                                        s/Thomas L. Ludington  
                                                        THOMAS L. LUDINGTON  
                                                        United States District Judge

Dated: November 5, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 5, 2010.

                                            s/Tracy A. Jacobs
                                            TRACY A. JACOBS